# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 29, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0154-WC

JSE, INC. D/B/A PERMA STAFF II                                    APPELLANT

|        | ON APPEAL FROM COURT OF APPEALS |
|--------|--------------------------------|
|        | NO. 2018-CA-0069 |
| V.     | WORKERS' COMPENSATION BOARD |
|        | NO. 13-WC-01378 |

PATRICIA AHART; LINDA CROWE;                                    APPELLEES
JOHN HARRIS, DECEASED; SUSAN
MUELLER, EXECUTRIX OF THE
ESTATE OF JOHN HARRIS; WHALER'S
CATCH CATERING AND/OR WHALER'S
CATCH RESTAURANTS OF PADUCAH, LTD;
UNINSURED EMPLOYERS' FUND;
KENTUCKY EMPLOYERS' MUTUAL
INSURANCE; HON. GRANT S. ROARK,
ADMINISTRATIVE LAW JUDGE AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

This case concerns the existence and scope of workers' compensation coverage under the terms of an employee leasing arrangement between JSE, Inc. d/b/a Perma Staff II ("Perma Staff"), an employee leasing company, and Whaler's Catch Restaurants of Paducah, LTD ("Whaler's Catch"), which owns the restaurant where claimant Patricia Ahart was injured. On appeal, the

issue is which business entity employed Ahart at the time of her injury. A secondary issue is whether Ahart's claim against Perma Staff was time-barred.

The Administrative Law Judge ("ALJ") found as follows: 1) Ahart sustained a work-related injury while employed by Perma Staff and Whaler's Catch; 2) at the time of Ahart's injury, Kentucky Employers' Mutual Insurance ("KEMI") was the at-risk insurer; and 3) Ahart's claim against Perma Staff was not barred by the statute of limitations. Both the Workers' Compensation Board ("Board") and the Court of Appeals affirmed. Upon extensive review of the record and applicable law, we conclude that the ALJ's factual findings were supported by substantial evidence and that the ALJ correctly applied the law, and therefore affirm.

## I.     Facts and Procedural Background

KRS[1] 342.615(1)(d) states that employee leasing arrangements include any "arrangement which involves the allocation of employment responsibilities between two (2) or more entities." In February 1992, Perma Staff and Whaler's Catch executed an employee leasing contract entitled "Agreement for Human Resources Management" ("the contract"), the terms of which were still in effect when Ahart was injured. Pursuant to this contract, Whaler's Catch outsourced its administrative and human resources tasks, such as payroll management, workers' compensation coverage, group health insurance and benefit administration, to Perma Staff. By securing the services of Perma Staff,

---

[1] Kentucky Revised Statutes.

2

Whaler's Catch relieved itself of the burden and expense of handling those tasks with in-house administrative personnel. Essentially, Perma Staff fulfilled its administrative responsibilities by becoming the "co-employer" of Whaler's Catch workforce.

The contract further provided that all individuals assigned to Whaler's Catch to fill positions were employees of Perma Staff, which retained responsibility for recruiting, training, evaluating, replacing, supervising, disciplining, and terminating all employees assigned to fill Whaler's Catch job positions. The contract permitted Perma Staff to designate on-site supervisors from among its employees assigned to fill Whaler's Catch employment needs, who were to be under the direct supervision of the Perma Staff district manager of that area. The contract did not expressly require any individual hired by a Whaler's Catch on-site supervisor to complete any employee-related paperwork with Perma Staff as a prerequisite to employment.

When Ahart sustained her injuries on September 25, 2011, she was working as a server at a catering event for Whaler's Catch. The catering event took place at the French Quarter, a building owned by and adjacent to Whaler's Catch. The event used Whaler's Catch for food and refreshments since the French Quarter did not have a kitchen. While retrieving refreshments at Whaler's Catch, Ahart fell through an open, unguarded trapdoor in the floor behind the bar. Because of her fall, Ahart sustained severe head and brain injuries. At the time of her injury, Whaler's Catch had no independent insurance coverage; it was only insured via Perma Staff's policy with KEMI.

3

Whaler's Catch catering services were overseen by Linda Crowe,[2] who hired Ahart and others on an as-needed basis to work catering events and paid them in cash. Regular and full-time Whaler's Catch employees also worked the events and received paychecks from Perma Staff. John Harris, now deceased, was the owner and operator of Whaler's Catch. At his direction, Crowe verbally requested that the temporary, as-needed employees, including Ahart, complete employee-related paperwork with Perma Staff. However, Ahart refused to do so since she preferred to be paid in cash for her work. As a result, Ahart was not on Perma Staff's payroll and never received a paycheck from Perma Staff.[3]

Perma Staff maintains that its coverage under the KEMI policy does not extend to Ahart since she was not a "leased employee" under the contract between Perma Staff and Whaler's Catch. Perma Staff asserts that it had no knowledge of Ahart working at Whaler's Catch. Rather, Perma Staff posits that Ahart was Crowe's employee and that Crowe operated the catering business as an independent contractor. Accordingly, Perma Staff argues that coverage for Ahart's injury should be through the Uninsured Employers' Fund, not its policy with KEMI.

The ALJ found that the catering business was not a separate entity from Whaler's Catch and that Ahart was not Crowe's employee at the time of her

---

[2] Crowe is referred to at times in the record as Curtis. For consistency, we refer to her as Crowe.

[3] Prior to her injury, Ahart also worked for Western Baptist Hospital in the financial department.

4

injury.  Instead, the ALJ found that the catering operation was part of Whaler's Catch and that Ahart was an employee of both Whaler's Catch and Perma Staff and was covered by Perma Staff's policy with KEMI.  The ALJ awarded Ahart disability and medical benefits for 100% permanent total disability.  The Board and Court of Appeals affirmed.  This appeal followed.

## II.  Standard of Review

The well-established standard of review for the appellate courts of a decision of a workers' compensation decision "is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."  *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992).  "Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact."  *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018).  As to questions of law, an appellate court reviews *de novo* a decision of the Board or ALJ regarding proper interpretation of the law or its application to the facts.  *Id.* (citation omitted).  "The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence."  *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citations omitted).

"When the decision of the fact-finder favors the person with the burden of proof, [her] only burden on appeal is to show that . . . some evidence of substance . . . support[ed] the finding, meaning evidence which would permit a

5

fact-finder to reasonably find as it did." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). In this case, Ahart bore the burden of establishing that she was an employee of Whaler's Catch and Perma Staff – so we review the ALJ's finding to see if it was supported by evidence of substance.

## III. Analysis

Perma Staff and KEMI argue that no substantial evidence supported the ALJ's finding that Ahart was an employee of Whaler's Catch and Perma Staff and thus covered by the KEMI policy. They maintain that Ahart was an employee of Crowe, who operated the catering business as an independent contractor. Perma Staff further contends that Ahart's claim against it is barred by the statute of limitations. We will address each argument in turn.

### A. *The catering operation was not a separate business entity from Whaler's Catch.*

Whether Crowe was operating the catering business as an independent contractor "is a question of law if the facts below are substantially undisputed, and is a question of fact if the facts are disputed." *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991) (citation omitted). "A reviewing court must give great deference to the conclusions of the fact-finder on factual questions if supported by substantial evidence and the opposite result is not compelled." *Id.* Factors to consider in the independent contractor determination include "(1) the nature of the work as related to the business generally carried on by the alleged employer; (2) the extent of control exercised

6

by the alleged employer; (3) the professional skill of the alleged employee; and (4) the true intent of the parties." *Id.* at 119 (citations omitted).

Perma Staff argues that the ALJ avoided any real analysis of the evidence it presented showing that Crowe obtained a business license to operate the catering business and that she represented on her income tax returns that she owned and operated a catering business. Specifically, Perma Staff points to evidence that Crowe declared the receipts, expenses, and net loss from the catering business on her tax returns. In failing to consider this evidence, Perma Staff asserts that the ALJ improperly relied on the testimony of Crowe and Harris, who, Perma Staff argues, have perpetrated a sham designed to avoid paying taxes and other costs, such as insurance.

In concluding that Crowe was not an independent contractor, the ALJ found the testimony of Harris and Crowe to be more persuasive than what was represented on Crowe's tax returns. Prior to his death, Harris testified by deposition that he incorporated Whaler's Catch in 1991, that it has a catering department which is not a separate entity from the restaurant operation, and that he did not maintain separate bank accounts or bookkeeping for the catering department and the restaurant. He further testified that Crowe was a Perma Staff employee, was the catering director for Whaler's Catch, had the ability to hire and fire employees, had no ownership in Whaler's Catch, and did not operate or own her own catering business. He acknowledged that Crowe hired temporary help as needed and paid those workers in cash. No unemployment funds were withheld from those cash payments and those

7

payments were not reported to Perma Staff for purposes of determining the workers' compensation insurance premium. Harris testified that the net income from the catering department went to Whaler's Catch to pay expenses, including the catering expenses. He stated that Whaler's Catch regular employees also performed catering duties, the restaurant was used to prepare food, and the Whaler's Catch van was used in the catering operation. Credit card payments for catering events were processed through the restaurant just like any other restaurant bill.

Crowe testified that Harris promoted her from the position of waitress to catering director for Whaler's Catch in the late 1990's. She stated she had no ownership in Whaler's Catch; rather she considered herself to be an employee of Whaler's Catch and Perma Staff. Until her pay became based on commission for her catering director duties, she received a weekly paycheck from Perma Staff. After she became catering director, Harris wrote checks for her commission (20% of net proceeds of catered events), which were issued through Whaler's Catch. Crowe continued to receive paychecks from Perma Staff reflecting bonuses, benefits and withholdings after she became catering director.

Crowe stated that in 2005, Harris asked her to obtain a City of Paducah business license, which she did. She was unclear as to why he made such a request, as she did not operate an independent catering business outside of Whaler's Catch or own any of her own catering equipment or supplies. Harris testified that he did not recall asking Crowe to obtain a business license.

8

Crowe testified that she paid Ahart in cash on an hourly basis from funds provided by Harris on behalf of Whaler's Catch. Crowe's catering records reflect that in 2011, Ahart worked three catering events, including the one on the day she sustained the injury at issue. On that day - Sunday when Whaler's Catch is typically closed - Crowe obtained permission from Harris to use the French Quarter building for an event and to open the restaurant to prepare food and drinks. The catering event was staffed by both regular and temporary, as-needed workers. Crowe testified that Harris knew Ahart was working the event that day and he also knew that she had not completed paperwork yet with Perma Staff, as Crowe had asked her to do several times.

Perma Staff submitted Crowe's 2011 federal income tax return as evidence that she claimed expenses for the catering business as an independent contractor and argued that she was Ahart's employer. Crowe's 2011 tax records further reflect that Perma Staff issued her a W-2 representing the amount in bonuses paid to her and Whaler's Catch issued her a Form 1099 reflecting "nonemployee compensation." Nonetheless, the ALJ found that such representations were not dispositive of the actual relationship of the parties. Instead, the ALJ was more persuaded by the testimony of Harris and Crowe that their intent was not that the catering operation be a separate business entity from Whaler's Catch. The evidence showed that the nature of the work of Whaler's Catch and the catering business were inextricably intertwined: the catering operation used Whaler's Catch restaurant to prepare food, its van to deliver food, and its premises to hold events. Employees who worked the

9

catering events were paid in cash by Whaler's Catch or received paychecks from Perma Staff. Crowe testified that she was not an independent contractor and instead considered herself to be a Perma Staff employee, with authority to oversee the catering events. Crowe received paychecks from both Perma Staff and Whaler's Catch. Also, she was promoted to the position of catering director by Harris, who had been designated by Perma Staff as on-site supervisor of Whaler's Catch.

While a reviewing court "cannot substitute its evaluation of the weight and credibility of the evidence" for that of the lower tribunal, nevertheless those factual findings "in favor of the claimant must be supported by substantial evidence" meaning "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971). Under the factors set forth above for determining whether an individual is an independent contractor, we find that substantial evidence establishes that Crowe was not an independent contractor and was not Ahart's employer. Rather, the evidence supported the ALJ's determination that the catering business was not a separate operation, but rather was part of Whaler's Catch ongoing, regular business activity.

**B. *Ahart was an employee of Whaler's Catch and Perma Staff and therefore covered by KEMI's policy.***

Two contracts are relevant in assessing whether Ahart's injury is covered by the KEMI policy. First, the employee leasing contract between Perma Staff and Whaler's Catch – and whether Ahart qualified as a Perma Staff employee.

10

And second, the insurance policy between KEMI and Perma Staff – and whether coverage extended to Ahart.

By way of background, KRS 342.615, codified in 1996, establishes the framework for employee leasing. The statute created two classes of workers (leased employees and temporary workers) and two classes of employment agencies (employee leasing companies and temporary help services). It provides in relevant part as follows:

> Registration of employee leasing companies; coverage requirements for lessees; status of temporary help service
>
> (1) As used in this section:
>
> (a) "Employee leasing company" or "lessor" means an entity that grants a written lease to a lessee pursuant to an employee leasing arrangement;
> (b) "Lessee" means an employer that obtains all or part of its workforce from another entity through an employee leasing arrangement;
> (c) "Leased employee" means a person performing services for a lessee under an employee leasing arrangement;
> (d) "Employee leasing arrangement" means an arrangement under contract or otherwise whereby the lessee leases all or some of its workers from an employee leasing company. Employee leasing arrangements include, but are not limited to, full-service employee leasing arrangements, long-term temporary arrangements, and any other arrangement which involves the allocation of employment responsibilities among two (2) or more entities. For purposes of this section, "employee leasing arrangement" does not include arrangements to provide temporary workers;
> (e) "Temporary worker" means a worker who is furnished to an entity to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions for a finite period of time; and
> (f) "Temporary help service" means a service whereby an organization hires its own employees and assigns those employees to clients for finite periods of time to support or supplement the client's workforce in special work situations, including employee absences, temporary skill shortages, and seasonal workloads.

11

\* \* \* \*

(4) A lessee shall fulfill its statutory responsibility to secure benefits for leased employees under this chapter by purchasing and maintaining a standard workers' compensation policy approved by the commissioner of the Department of Insurance. A lessee may fulfill that responsibility by contracting with an employee leasing company to purchase and maintain the required insurance policy. In either event, it shall be the responsibility of the lessee to maintain in its files at all times the certificate of insurance, or a copy thereof, evidencing the existence of the required insurance. The exposure and experience of the lessee shall be used in determining the premium for the policy and shall include coverage for all leased employees.

(5) A temporary help service shall be deemed the employer of a temporary worker and shall be subject to the provisions of this chapter.

The ALJ found that Ahart was working as a "temporary employee" of Whaler's Catch on the date of her accident and was covered under the KEMI policy regardless of whether she signed up, or completed employee-related paperwork, with Perma Staff. The ALJ noted that the KEMI policy listed Whaler's Catch as a named insured and did not specify that it covered only leased employees. Since under KRS 342.375, any policy of insurance covers all employees of the insured, the ALJ concluded that Ahart was covered under the KEMI policy as she was an employee of Whaler's Catch at the time of her injury.

The ALJ further found that Perma Staff and Whaler's Catch were "co-employers" of the restaurant's employees and that Ahart was an employee of both. The contract expressly states that Perma Staff "is an independent contractor and all individuals assigned to Client to fill the Job Function

12

Positions are employees of Perma Staff II[.]" The contract then provides that "Perma Staff II may designate on-site supervisors from among its employees assigned to fill Client's Job Function Positions. These supervisors shall direct operational and administrative matters related to services provided by Perma Staff II employees[.]" The ALJ found no provision of the contract required that an individual hired by a Whaler's Catch on-site supervisor sign up with Perma Staff in order to become a Perma Staff employee.

Harris testified that, in addition to being Whaler's Catch's owner/operator, he had also been a Perma Staff employee for more than twenty years and was a supervisor. Harris stated that he, and other workers he chose, decided who to hire and fire at Whaler's Catch, but that pursuant to the contract, Perma Staff maintained the final say. Harris testified that he was paid a salary by Perma Staff. Joseph Eaton, president and co-owner of Perma Staff, testified that Ahart was not a Perma Staff employee, she never completed an application for employment with Perma Staff, and never received any pay from Perma Staff, who reserved the right to hire and fire pursuant to the employee leasing contract. However, Eaton also testified that he considered the relationship between his company and clients as being "co-employers." Jack Hawkins, vice-president and co-owner of Perma Staff, testified that Whaler's Catch employees faxed their weekly timesheets to Perma Staff, that Ahart was not in Perma Staff's database and was not a Perma Staff employee. He stated that he informed Harris of this when Harris notified him of Ahart's injury.

13

Based on the testimony, the ALJ found that Ahart was assigned by Harris and Crowe to fill a job position at Whaler's Catch, that they had authority to do so, and that Ahart then became an employee of Perma Staff, despite her refusal to sign up with Perma Staff. We find that substantial evidence supported the ALJ's findings. Moreover, Perma Staff was free to include as a provision of the contract that it must have actual knowledge of any individual working at Whaler's Catch and to place the responsibility of maintaining an updated employee roster with Whaler's Catch. However, the contract provided otherwise: it authorized on-site supervisors to hire individuals without further approval from Perma Staff and without requiring documentation of the new employee's hiring. As the testimony indicates, the hiring of additional food workers on an as-needed basis is commonplace in the food industry, especially for a catering department. Thus, had Perma Staff wished to better monitor the status of its clients' staff, it could have included such provisions in its contract with Whaler's Catch.[4]

---

[4] The Court of Appeals properly rejected the argument that the ALJ's reference to Ahart as a temporary employee precluded a finding that she could be a Perma Staff employee because KRS 342.615(1)(d) excludes temporary workers from its purview. *See* KRS 342.615(1)(d) ("[f]or purposes of this section, 'employee leasing arrangement' does not include arrangements to provide temporary workers[]"). Perma Staff is not a temporary help service that furnished to Whaler's Catch a "temporary worker" – defined as "a worker who is furnished to an entity to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions for a finite period of time[.]" KRS 342.615(1)(e). The contract between Perma Staff and Whaler's Catch is undisputedly an employee leasing arrangement. Thus, the ALJ's reference to Ahart as a temporary employee was not a finding of fact but rather another way of saying she was a worker employed on an as-needed basis.

14

The ALJ further found that as a Perma Staff employee, Ahart was covered under KEMI's policy on the date of her injury. KRS 342.375 provides that "[e]very policy or contract of workers' compensation insurance . . . shall cover the entire liability of the employer for compensation to each employee subject to this chapter[.]" Employee leasing companies, as contemplated in KRS 342.615, operate on a fundamentally different premise and perform a fundamentally different service than traditional employers. *See, e.g., Labor Ready, Inc. v. Johnston*, 289 S.W.3d 200, 207 (Ky. 2009). While KRS 342.340(1) requires an employer to provide workers' compensation coverage for its employees, and that employer must file proof of coverage with the Commissioner of Kentucky's DWC,[5] KRS 342.615(4) provides that an employer who uses an employee leasing company may insure the leased employees either directly or by contracting with the employee leasing company to provide coverage. The associated administrative regulations for employee leasing companies acknowledge that an employee leasing company may provide coverage for leased employees, but not every employee. *See* 803 KAR[6] 25:230 Section 4(4) (an employee leasing company must file a "listing of the leased employees associated with each lessee[.]")

No dispute exists that Whaler's Catch did not have direct coverage for any of its employees at the time of Ahart's injury. Perma Staff and KEMI maintain that since Ahart never signed up for Perma Staff's payroll, she was

---

[5] Department of Workers' Claims.

[6] Kentucky Administrative Regulations.

not a "leased employee" under the employment leasing arrangement between Perma Staff and Whaler's Catch and thus was not covered under Perma Staff's policy with KEMI. They emphasize that because Ahart never applied as an employee with Perma Staff, no premium was ever charged based on Ahart's payroll and she was never included in any audits conducted to determine employee payroll. *See* KRS 342.615(4) (requiring that when a workers' compensation insurer provides coverage to an employee leasing company, "[t]he exposure and experience of the lessee shall be used in determining the premium for the policy and shall include coverage for all leased employees[]"). KEMI emphasizes that its coverage for Perma Staff and Perma Staff's "clients" (which included Whaler's Catch) only insured workers employed by Perma Staff who were "leased" to work at Whaler's Catch.

As a general rule, the interpretation and construction of an insurance contract is a matter of law for this Court. *Kentucky Employers' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 881 (Ky. 2015). "Appellate review, therefore, is *de novo,* and no deference is given to the decisions of lower tribunals, even as to the existence of an ambiguity." *Id.* Further, terms in an insurance contract are to be construed according to their plain and ordinary meaning. *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007). "Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and [s]uch mutual intention is to be deduced, if possible, from the language of the contract alone." *Nationwide Mut.*

16

*Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999) (internal quotations and citation omitted).

Here, the KEMI policy identified Perma Staff as the policyholder and the policy period as covering the date of Ahart's accident. Jerry Terry, the underwriting manager of KEMI, testified that KEMI is not and never was the workers' compensation insurance carrier for Whaler's Catch, Harris or Crowe. In fact, Terry stated that a few days after Ahart's injury, KEMI received an application for insurance from Whaler's Catch. However, Whaler's Catch never paid the premium deposit and no policy was ever issued. KEMI cites this evidence as conclusive that Whaler's Catch had no reasonable expectation of coverage for its non-leased employees. *See, e.g., Ellington*, 459 S.W.3d at 883 (no expectation of coverage exists when no premiums are charged). The testimony of Whaler's Catch accountant, Wayne Shelton, verified that Whaler's Catch never paid any premiums to KEMI. Accordingly, KEMI contends that when Whaler's Catch was receiving employees from sources other than Perma Staff, it was operating without workers' compensation insurance with respect to those non-leased employees.

Despite KEMI's assertions that the only reason Whaler's Catch was listed on its endorsement was because the National Council on Compensation Insurance (NCCI) required a list of client companies for informational and descriptive purposes and not to create a direct insurer/policyholder relationship, the Court of Appeals disagreed. The Court of Appeals noted that Perma Staff and its named insureds, which included Whaler's Catch, were

17

included in KEMI's policy issued to Perma Staff. Under Section F titled "Locations", the policy states "this policy covers all of our workplaces in the Commonwealth of Kentucky unless you have other insurance or are self-insured for such workplaces." Because the policy contained no distinction between leased and non-leased employees, the Court of Appeals reasoned that KEMI was also the carrier at risk for Whaler's Catch since Whaler's Catch was identified in the schedule of named insureds on the policy.

An important consideration is how KEMI calculated its premium estimate at the beginning of a policy period. Terry testified that initially KEMI had no information reflecting the dollar-for-dollar weekly or monthly payroll being paid by Perma Staff to its employees assigned to Whaler's Catch. Thus, KEMI would check the payroll at the end of the policy period in an audit and then decide whether a credit or additional charge was appropriate. During the policy period, KEMI did not require Perma Staff to provide it with an employee roster or a signed enrollment form by each employee, or to report any changes in the workforce such as when an employee was hired or fired or whether the employee was permanent or temporary. The policy itself did not make any distinction between leased versus non-leased employees or indicate that KEMI must be aware of an individual worker.

Pam Younts, who conducted an audit of KEMI for Perma Staff's accounts, testified that the KEMI policy issued to Perma Staff was based on payroll and other remuneration. Despite high turnover in the restaurant business and the need for temporary fill-in help – who were paid in cash from

18

time to time – Yount confirmed that KEMI's audit process did not include a method for determining whether cash payments were made to workers, or require that its policyholders' roster of employees be current and all-inclusive, and include those who worked on an as-needed basis and who were paid in cash. This was so despite restaurants' common practice of employing help on an as-needed basis and paying those workers in cash. As the Court of Appeals noted, while KEMI would like to rewrite its policy to specifically exclude workers such as Ahart as employees of its insured, it cannot do so retrospectively.

Lastly, we note that KEMI provided Whaler's Catch with a document, through Perma Staff, to post in the restaurant as proof of coverage and notice to employees regarding the reporting of work-related injuries. This notice listed KEMI as the workers' compensation carrier for Whaler's Catch. Given KEMI's outward representation of itself as the insurer carrier for Whaler's Catch and its failure to require an up-to-date and accurate roster of its policyholder's workers, KEMI cannot blame others for its failure to require the necessary documentation to accurately assess the risk for its insured's client. Accordingly, we affirm the ALJ's ruling that Ahart's injury is covered under Perma Staff's policy with KEMI.

### C. *Ahart's claim against Perma Staff was not barred by the statute of limitations.*

On September 5, 2013, Ahart filed the underlying workers' compensation claim alleging entitlement to benefits for injuries she sustained on September 25, 2011. On her Form 101 Ahart named as defendants Harris; Whaler's

19

Catch Catering and/or Whaler's Catch Restaurants of Paducah, LTD; KEMI; and the Uninsured Employers' Fund ("UEF") as defendants. The UEF was joined because Whaler's Catch was without a separate policy of coverage on the date of Ahart's accident.

On December 5, 2013, Ahart filed a motion to amend her Form 101 to name Crowe and Perma Staff as additional defendants. After the ALJ denied the motion because Ahart failed to serve it on the parties to be joined, she renewed her motion on February 17, 2014. Perma Staff objected to being joined, arguing that Ahart was time-barred from amending her Form 101 to include it as a party more than two years after the date of her accident. The ALJ disagreed and granted Ahart's motion to join Perma Staff on March 17, 2014.

> KRS 342.185(1) provides, in relevant part:

> Except as provided in subsections (2) and (3) of this section, no proceeding under this chapter for compensation for an injury or death shall be maintained unless **a notice of the accident shall have been given to the employer as soon as practicable** after the happening thereof and unless an application for adjustment of claim for compensation with respect to the injury shall have been made with the department within two (2) years after the date of the accident, or in case of death, within two (2) years after the death, whether or not a claim has been made by the employee himself or herself for compensation.

(emphasis added).

With respect to the procedure for adjustment of claims, 803 KAR 25:010 provides, in part:

> Section 2. Parties.

20

(1) Any interested party may file an original application for resolution of claim pursuant to KRS 342.270 or 342.316. The injured workers, or survivors, shall be designated as plaintiff. Adverse parties shall be designated as defendants.

(2) All persons shall be joined as plaintiffs in whom any right to any relief pursuant to KRS Chapter 342, arising out of the same transaction and occurrence, is alleged to exist. If a person refuses to join as a plaintiff, that person shall be joined as a defendant, and the fact of refusal to join as a plaintiff shall be pleaded.

(3)(a) All persons shall be joined as defendants against whom the ultimate right to relief pursuant to KRS Chapter 342 may exist, whether jointly, severally, or in the alternative. An administrative law judge shall order, upon a proper showing, that a party be joined or dismissed.

(b) **Joinder shall be sought by motion as soon as practicable after legal grounds for joinder are known.** Notice of joinder and a copy of the claim file shall be served in the manner ordered by the administrative law judge.

(emphasis added).

The ALJ found as follows: 1) Harris was an "agent" of Perma Staff and since the original claim named Harris as a defendant, this was adequate notice of Ahart's claim against Perma Staff; 2) the original claim named KEMI as a defendant and KEMI was the insurance carrier for Perma Staff; 3) Perma Staff knew Ahart was seeking workers' compensation benefits; and 4) a possibility existed that Ahart was mentally incapacitated at the time she filed her claim. On appeal, the Board affirmed the joinder, but for different reasons.

The Court of Appeals also agreed that joinder of Perma Staff was proper, noting as the Board did that the issue of the identity of Ahart's employer was complex. The appellate court observed that Whaler's Catch, KEMI and the UEF filed their Form 111s, yet none of them mentioned Perma Staff. KEMI moved to dismiss itself as a party, stating that the DWC Commissioner had certified Whaler's Catch was uninsured at the time of Ahart's injury, but then moved to

21

pass its motion to dismiss, acknowledging that it had misread the certification and also disclosing its contractual relationship with Perma Staff. Shortly thereafter, Ahart filed a motion to add defendants, including Perma Staff.

Perma Staff argues that the two-year statute of limitations for joining additional defendants expired September 25, 2013. It maintains that Harris is not its agent and was not named in the original complaint as its agent. It also points to Ahart's affidavit submitted in support of her application, in which she claims she was either an employee of Whaler's Catch or an employee of Harris operating a separate catering business. Even though Ahart was hired and paid by Crowe, she did not join Crowe as a party defendant until she also moved to join Perma Staff as an alleged employer. Perma Staff notes that KEMI was not named as the putative direct insurer of Whaler's Catch and not as a carrier for Perma Staff or in any capacity associated with Perma Staff. Thus, it asserts no evidence shows that Perma Staff had any knowledge of Ahart's filing of this claim prior to receiving the pleadings seeking to join it as a party. Perma Staff further argues that a "possibility" of Ahart's mental incapacitation is an insufficient basis for extending the statute of limitations.

With respect to notice, Perma Staff emphasizes that the attorney representing Ahart in this workers' compensation claim is the same attorney representing her in the civil action, filed August 27, 2012, and had adequate opportunity to conduct discovery in the civil action which would have revealed Perma Staff's potential involvement in this case. That civil action was ongoing for a year before Ahart filed her workers' compensation claim. Perma Staff

22

further avers that Ahart failed to present any evidence as to when the legal grounds for joinder of Perma Staff were first known to her or her attorney. Lastly, Perma Staff argues that the Workers' Compensation Act's requirement that a claim be filed within two years of the date of the injury is a jurisdictional requirement, analogous to a notice of appeal from the ALJ to the Board. Like a notice of appeal, Perma Staff contends that the failure to name an indispensable party precludes any further action against that party. *See* 803 KAR 25:010 Section 22(2)(c) (the notice of appeal "shall [d]enote all parties against whom the appeal is taken as respondents"); *Nelson County Bd. of Educ. v. Forte*, 337 S.W.3d 617, 626 (Ky. 2011) ("failure to name an indispensable party in the notice of appeal is a jurisdictional defect that cannot be remedied[]") (internal quotations and citation omitted).

However, the plain language of KRS 342.185(1) states that an *application* for claim benefits must be filed within two years of the date of the accident, which Ahart did by timely filing a Form 101 on September 5, 2013. KRS 342.185(1) further provides that "a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof[.]" 803 KAR 25:010 Section 2(3)(b) likewise reads "[j]oinder shall be sought by motion as soon as practicable after legal grounds for joinder are known." As noted by the Board, Perma Staff does not argue that Ahart failed to provide notice as soon as practicable; rather, it argues that Ahart sought to amend her claim after the two-year statute of limitations had run on September 25, 2013. Yet, KRS 342.185(1) only requires the filing of the application, and does not require a

23

claimant to name all adverse parties within the two-year statute of limitations. 803 KAR 25:010 Section 2(3)(b) additionally allows a party to seek joinder by motion "as soon as practicable after legal grounds for joinder are known." Thus, we agree with the conclusions of the tribunals below that Ahart's joinder of Perma Staff as a defendant was not time-barred.

## IV. Conclusion

For the foregoing reasons, we affirm the Court of Appeals.

Minton, C.J.; Conley, Hughes, Keller, Lambert, and VanMeter, J.J., sitting. All concur. Nickell, J., not sitting.


COUNSEL FOR APPELLANT:

James Gordon Fogle
Fogle Keller Walker, PLLC


COUNSEL FOR APPELLEE,
PATRICIA AHART:

David Vance Oaks
Oaks Law Firm


COUNSEL FOR APPELLEE,
WHALER'S CATCH CATERING
AND/OR WHALER'S CATCH
RESTAURANTS OF PADUCAH, LTD:

Samuel J. Bach
Bach & Armstrong, LLP

COUNSEL FOR APPELLEE,
LINDA CROW:

Laurie Goetz Kemp
Kemp Law Office

Crystal Gates Rowe
Kightlinger & Gray, LLP

COUNSEL FOR APPELLEE,
JOHN HARRIS, DECEASED:

Jonathan Freed
Louis Miller Grumley
Bradley, Freed & Grumley, P.S.C.

COUNSEL FOR APPELLEE,
SUSAN MUELLER, EXECUTRIX
OF THE ESTATE OF JOHN HARRIS:

Whitney Jones Denson
McMurry & Livingston

COUNSEL FOR APPELLEE,
KENTUCKY EMPLOYERS' MUTUAL
INSURANCE:

Barry Lewis
Lewis and Lewis Law Offices

COUNSEL FOR APPELLEE,
UNINSURED EMPLOYERS' FUND:

Charles David Baston
Assistant Attorney General